IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EUNICE ARROYO-PÉREZ,

Plaintiff

v.

DEMIR GROUP INTERNATIONAL aka DGI GROUP, HAYGO DEMIR aka HAYGO DEMIRIAN,

Defendants

CIVIL 09-2231 (JA)

OPINION AND ORDER

Plaintiff and defendants have filed motions for summary judgment on three of the remaining twenty affirmative defenses raised by the defendants.[1] (Docket Nos. 46 & 66.) For the reasons set forth below, the plaintiff's motion for summary judgment on her Title VII claim is GRANTED, and her motion for summary judgment on her Law 80 claim is DENIED. (Docket No. 46.) Conversely, defendants' cross motion for summary judgment on their Title VII affirmative defense is DENIED, and their cross motion for summary judgment on the Law 80 claim is also DENIED. (Docket No. 66.)

[1]The defendants raised twenty-two affirmative defenses in their answer to the complaint. (Docket No. 39.) Two of these defenses have already been ruled upon and rejected. (Docket Nos. 32 & 33.)

I. PROCEDURAL BACKGROUND

Plaintiff Eunice Arroyo-Perez ("Arroyo") filed a motion for partial summary judgment on October 23, 2010. (Docket No. 46.) The plaintiff addresses defendants' Demir Group International and Haygo Demir (collectively, "DGI") third affirmative defense, that DGI adhered to the Title VII numerosity requirement. Additionally, the plaintiff requests summary judgment on defendants' Law 80 affirmative defense, that they complied with the statute's seniority requirement. The defendants filed their response in opposition on November 22, 2010, as well as cross-motion for summary judgment on the same counts. (Docket No. 66.) The defendants claim that Title VII does not apply to them, as they do not have the requisite fifteen employees necessary to be considered 'employers' under the statute. They additionally claim that the plaintiff was justifiably terminated under Law 80, as fluctuating economic conditions is an acceptable reason under Puerto Rican law. The plaintiff filed their opposition to the cross-motion for summary judgment on December 9, 2010. (Docket No. 70.)

Additionally, the plaintiff filed a motion to strike the inclusion of several exhibits included by defendants in their response in opposition. (Docket No. 71.) Plaintiff claims that several of the motions either lacked authenticity under Federal Rule of Evidence 901, were incomplete, or were not properly translated. Plaintiff also filed a motion to strike the errata sheet to Demir's deposition, included in its

cross motion for summary judgment, as improperly timed. (Docket Nos. 68 & 69.)

II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materiasl on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carrol v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit

Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment."). The nonmoving party must produce "specific facts showing that there is a *genuine issue* for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)); see also López Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000).

"A genuine issue exists when there is evidence sufficient to support rational resolution of the point in favor of either party." Nereida González v. Tirado Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . . " Burke v. Town of Walpole, 405 F.3d 66, 75 (1st Cir. 2005) (quoting United States v. One Parcel of Real Prop., 960 F.2d at 204). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

However, a moving party "may move for summary judgment '*with or without supporting affidavits*.'" Id. at 323 (quoting Rules 56(a) and (b)). "The

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); see also Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)) ("[the court] must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.").

Puerto Rico Local Rule 56

In the District of Puerto Rico, Local Rule 56(b), previously Local Rule 311(12), imposes additional requirements on the party filing for summary judgment as well as the party opposing the motion. A motion for summary judgment has to be accompanied by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried. Each fact asserted in the statement shall be supported by a record citation as required by subsection (e) of this rule." Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 56(b) (2009). When filing a motion in opposition the opposing party must include a separate, short, and concise statement admitting, denying or qualifying each fact set out by the moving party. Local Rules 56(c); see Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera

v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

These facts must be supported by specific reference to the record, thereby pointing out to the court any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001) (quoting Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d 922, 930-31 (1st Cir. 1983)); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000). Any statement of fact provided by any party which is not supported by citation to the record may be disregarded by the court, and any supported statement which is not properly presented by the other party shall be deemed admitted. See Local Rule 56(e). Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party. Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d at 932.

## II. DISCUSSION

### A. Motion to Strike

The plaintiff requests that I strike Exhibits V(a) and V(b), VII, IX(a) and IX(b), X, XI, XVI, XIV, and XVII(a), XVII(f), and IXIII(a) to (c), included in Docket

No. 66. (Docket No. 71, at 3-4.) The plaintiff draws four arguments against these exhibits, which may be categorized as (i) improper authentication; (ii) improper editing; (iii) incomplete and irrevelant; and (iv) improper translation. I will consider each in turn.

Local Rule 56(e) requires record citations in both "statement[s] of material facts" to be cited to "the specific page or paragraph of identified record material supporting the assertion." Local Rule 56(e). "The court may disregard any statement of fact not supported by a specific citation . . . . " Local Rule 56(e). "Documents supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed. R. Civ. P. 56(e)).

i. Improper Authentication

The plaintiff moves to strike Exhibits V, VII, IX, XVI, and XVII, in their entirety, for improper authentication. Exhibits must be properly authenticated under Fed. R. Evid. 901 or 902. Fed. R. Evid. 901(a). See, e.g., Godoy v. Maplehurst Bakeries, Inc., ___ F. Supp. 2d ___ , Civil 09-1696 (MEL), 2010 WL 4027822, at *2 (D.P.R. Oct. 13, 2010). Exhibits V(a) and V(b), appear to be spreadsheets of DGI's employees for the years 2007 and 2008. (Docket No. 66-5.) The defendants provide no context for this compilation of data. Worse, "employees 2007" and "employees 2008" is handwritten atop each document,

with no signature or verification of any kind. These documents are submitted for the truth of the matter asserted, namely, that DGI did not have the requisite fifteen employees to be subject to Title VII litigation. They are therefore hearsay. Though under Federal Rule of Evidence 803(6) business records may be exempt from hearsay status, they must be "shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12) or a statute permitting certification . . . ." Fed. R. Evid 803(6). The defendants provide no affidavit or signature from a custodian. Therefore, Exhibits V(a) and V(b) are stricken.

Similarly, Exhibit VII is stricken. (Docket No. 66-7.) Appearing to be a spreadsheet on the sales of each of DGI's territories from 2005-2008, it likewise has no authentication. Exhibits IX(a) and IX(b), are the most formal of the documents submitted. (Docket No. 66-9.) Under the heading "Demir Group International Payroll Summary January through December 2007 [and 2008]," they include a list of employees and their salaries. However, it too suffers from proper authentication. Exhibit IX(b) includes "missing - Illiany Mera - subcont. for PR market" in handwritten note, without any initials or identification. Both exhibits are therefore stricken. Finally, Exhibits XVI and XVII are spreadsheets, purportedly illustrating the plaintiff's contribution to overall sales in her various territories. (Docket Nos. 66-16 & 66-17.) But the defendants do not submit the

underlying documents relied upon in creating these spreadsheets. They, therefore, are stricken for lack of proper authentication.

ii. Incomplete

The plaintiff moves to have Exhibit XI stricken for incompleteness. (Docket No. 71, at 3.) Exhibit XI is a line of credit agreement and cost of borrowing disclosure statement. (Docket No. 66-11.) Five pages in length, it is missing pages 2 and 4. This exhibit does not have proper authentication, and is stricken from the record for lack of completeness.

iii. Improper Editing and Relevancy

The plaintiff moves for Exhibit X to be stricken due to improper editing and deletion. Exhibit X is an e-mail chain between Demir and "Rachel D.," concerning a new office. (Docket No. 66-10.) The plaintiff does not specify what the improper edits or deletions are, nor do I see any evidence of that occurring. Therefore, the motion to strike Exhibit X is denied. Similarly, the motion to strike Exhibit XVIII(a) to XVIII(e) is denied. (Docket No. 71, at 4; Docket No. 66-18.)

iv. No Translation

The plaintiff moves for Exhibit XIV to be stricken. Exhibit XIV is an e-mail written entirely in Spanish, with no certified translation. (Docket No. 66-14.) Local Rule 5(g) requires that "[a]ll documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied

by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts." Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 5(g) (2009); see Molina v. Unión Independiente Auténtica de la AAA, 555 F. Supp. 2d 284, 293 (D.P.R. 2008) (citing previous Local Rule 10(b)). Therefore, Exhibit XIV is stricken.

B. Statements of Uncontested Facts

Both parties contest the others' statements of uncontested facts. (Docket Nos. 66-2 & 70-1.) I will discuss each in succession. All statements not contested are deemed admitted.[2]

The following are the plaintiff's statement of uncontested facts:

> 1. Haygo Demir is the owner of both "DGI Canada" and "DGI Florida". No other entity or individual owns either of the two companies.
>
> 2. He is the President and sole Officer of Demir Group International, Inc., a corporation organized and

---

[2]Local Rule 56 of this district court requires that a party seeking summary judgment supply a list of the allegedly uncontested facts on which it applies (together with record citations). "This 'anti-ferret' rule aims to make the parties organize the evidence rather than leaving the burden upon the district judge. Where the party opposing summary judgment fails to comply, the rule permits the district court to treat the moving party's statement of facts as uncontested." Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005) (citing Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 46 (1st Cir. 2004); Morales v. A.C. Orssleff's EFTF, 246 F.3d at 32-35).

existing under the laws of the State of Florida. He also is the Secretary and Treasurer of the Florida Corporation.

3. He is the President and sole Officer of Demir Group International, Inc., a corporation organized and existing under the laws of Ontario, Canada. He also is the Secretary and Treasurer of the Canada corporation.

4. Mr. Demir owns all of the 100 shares of both DGI Florida and DGI Canada.

5. Neither DGI Canada nor DGI Florida has a board of directors. . . . The corporate documents of both corporations provide that Haygo Demir is the "Sole member of the Board of Directors."

. . .

7. DGI makes commissions on sales of jewelry. The sales realized by different employees, assigned either to Florida or Canada, were counted as income to one of the two companies, depending on the brand.

8. "Monies" from the Canada corporation were "shifted . . . from Canada to the United States." . . . Commissions which had formerly been received in Canada were switched over to Florida between 2006 and 2007.

9. On August 2, 2005, shortly after plaintiff began working for DGI, she received an email providing her with an "Employee Contact Information" from Brian Taylor, who identified himself as being from "DGI Head Office, in Toronto, Canada." The list shows a total of eighteen (18) employees (in addition to Mr. Demir), divided as follows:

- Eleven (11) employees in the "home office" in Canada;
- Four (4) "Field Reps" in the "Miami Office";
- One "Field Rep" in the Toronto Office;
- Two "field Reps" in Puerto Rico (Ilianny Mera and plaintiff Eunice Arroyo); and
- One "Field Rep" in St. Thomas.

. . .

11. In March of 2006 and again in January of 2008, Brian Taylor issued certificates on the letterhead, respectively, of "DGI - Demir Group International" and "Demir Group International," both times identifying the company as being in Toronto, Canada, certifying that plaintiff was an employee of "Demir Group International."

12. Brian Taylor does contract work for DGI Canada and is Haygo Demir's father-in-law.

. . .

15. Mr. Demir submitted a sworn declaration to this court in support of defendants' Motion for Change of Venue. . . . During his deposition, Mr. Demir admitted that he knew the sworn declaration was going to be submitted to this court to support the request for Change of Venue.

. . .

21. In early 2007, Ms. Arroyo was promoted to the position of Territory Manager, originally covering Puerto Rico and the Dominican Republic. A few months later, her territory was expanded to cover Antigua, Barbados, St. Lucia, Dominica and Trinidad as well.

22. As of the start of the calendar year 2008, there were five (5) Territory Managers of the complete DGI operation:

- Krystal Williams (Bermuda, Grand Cayman, Alaska);
- Blanca Rodríguez (Latin American and Mexico Domestic Markets);
- Ilianny Mera (St. Thomas, St. John, St. Croix, Tortola St. Maarten, St. Barths and St. Kitts);
- Plaintiff Eunice Arroyo (Dominican Republic, Puerto Rico, Antigua, Barbados, St. Lucia, Dominica and Trinidad);
- Tiffany Cox (Aruba, Bonaire, Curacao, Bahamas, Turks and Caicos, Haiti, Key West and Jamaica).

. . .

24. While plaintiff was on maternity leave in June of 2008, her Territory Assistant, Chantel Romeu was given the position of Territory Manager. . . . She received a $7,000 raise in June 2008 when she became Territory Manager.

25. While plaintiff was on maternity leave, Chantel Romeu was made Territory Manager over all of her territories except for the Dominican Republic and Puerto Rico. These were the only territories over which plaintiff was Territory Manager upon her return to the company after her maternity leave.

(Docket No. 46-3, at 1-8.)

The following are the defendants' statements of uncontested facts:

8. In 2007 and 2008, Ilianny Mera and Eunice Arroyo were the only DGI employees who were residents of Puerto Rico.

9. In 2007 and 2008, Ilianny Mera and Eunice Arroyo were the only DGI employees who were based in Puerto Rico.

10. Ilianny Mera was more senior than Eunice Arroyo.

11. Ilianny Mera was classified as an independent contractor. If she is considered an independent contractor and not as an employee *per se*, Arroyo would be the only DGI employee who is a resident of Puerto Rico and who is based in Puerto Rico.

(Docket No. 66-2, at 4-8.)

Paragraph six of the defendants' statement of uncontested facts (Docket No. 66-2, at 4) relies on the defendants' errata sheet, and must then be rejected under Federal Rule of Civil Procedure 56. Similarly, paragraph 4 relies on Exhibit V, which I struck from the record. (Id. at 2, ¶ 4.) Paragraph 12 relies on the untranslated e-mail in support, and is thus rejected. (Id. at 8, ¶ 12.) The defendants object several facts under "relevance." (Id. at 3-5, ¶ 5 & at 7-8, ¶ 10.) Absent clear evidence of irrelevance, their objections are rejected. Several facts are objected to, with no evidence pointed to in the record. (Id. at 3-4, ¶¶ 5, 6, 7 & at 7-9, ¶¶ 10, 11, 14.) These are all rejected. Several paragraphs support the "general premise" of the plaintiff's facts, contesting them only as

written. (Id. at 2, ¶ 3 & at 4-7, ¶¶ 8, 9.) Finally, paragraph 13 agrees with plaintiff. As such, all the contested facts proffered by the defendants are rejected.

The plaintiff objects to several facts for reasons similar to my rejections of the defendants' exhibits. (Docket No. 71.) Facts 2, 3, 4 and 7 all rely on Exhibit V, which I struck from the record. (Id.) Facts 12 and 13 similarly rely on sales figures and territory quotas stricken from the record. Therefore, facts 2, 3, 4, 7, 12 and 13 of the defendants' statement of uncontested facts are stricken from the record for improper reliance on evidence stricken from the record.

Now I turn to the arguments of both parties.

C. Law 80

The question that I must answer is: does Puerto Rico's Law 80 mandate that its seniority requirement be evaluated among all employees with similar job classifications, regardless of whether they are employed in Puerto Rico? Or should those employed in Puerto Rico only be compared with others working in Puerto Rico?

"Puerto Rico Law 80 provides the exclusive remedy under Puerto Rico law for an employee who is discharged without demonstrating just cause. P.R. Laws Ann. tit. 29, §§ 185a-185m. Pursuant to Law 80, dismissed at-will employees are entitled to certain benefits, including payment for vacation time accrued and not enjoyed due to work demands." Santiago-Ramos v. Centennial P.R. Wireless

Corp., 217 F.3d at 58 (citing P.R. Laws Ann. tit. 29, § 185a; Beauchamp v. Holsum Bakers of P.R., Inc., 116 D.P.R. 522 (1985)); Valera Terón v. Banco Santander de P.R., 257 F. Supp. 2d 454, 464 (D.P.R. 2003). If an employee brings a claim under Law 80, the employer has the burden to prove that the dismissal was justified. P.R. Laws Ann. tit. 29, § 185k; Valera Terón v. Banco Santander de P.R., 257 F. Supp. 2d at 464. "Accordingly, Law 80 establishes a presumption of unjust dismissal against employers." Valera Terón v. Banco Santander de P.R., 257 F. Supp. 2d at 464 (citing Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001); Arce v. Martínez, 146 D.P.R. 215, 230 (1998); Delgado Zayas v. Hosp. Interamericano, 137 D.P.R. 643, 650 (1994)).

An employer may satisfy 'just cause' for an employee's termination through any of the non-exhaustive list of circumstances under section 2 of Law 80. Some justifiable reasons include "'the full, temporary or partial closing of the operations of the establishment; technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment;' and 'reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge.'" Valera Terón v. Banco Santander de P.R., 257 F. Supp. 2d at 464-65 (quoting P.R. Laws Ann. tit. 29, § 185b(d), (e), and (f)); accord Rodríguez v. E. Air Lines, Inc., 816 F.2d 24, 26 (1st Cir. 1987).

Assuming that the employer provides evidence of "just cause," it has one additional requirement. Section 3 of Law 80, P.R. Laws Ann. tit. 29, § 185c, requires that employers "retain employees with greater seniority when layoffs become necessary for business or economic reasons." Rodríguez v. E. Air Lines, Inc., 816 F.2d at 26 (quoting Rodríguez v. E. Air Lines, 637 F. Supp. 536, 541 (D.P.R. 1986)). Seniority is determined within an employee's "occupational classification." P.R. Laws Ann. tit. 29, § 185c. "However, if there is a clear and conclusive difference in favor of the efficiency or capacity of the workers compared, these efficiency or capacity factors shall prevail in the decision." Valera Teron v. Banco Santander de P.R., 257 F. Supp. 2d at 465 (citing P.R. Laws Ann. tit. 29, § 185c).

A terminated employee who succeeds in their Law 80 claim cannot request reinstatement; rather, the only remedy is severance pay. Rodríguez v. E. Air Lines, Inc., 816 F.2d at 27. "The purpose of this act is to guarantee that employees discharged without good cause be entitled to receive from their employer a one-month salary compensation plus an additional progressive indemnity equivalent to at least a one-week salary for each year of service." Id. However, "an employer willing to pay the price is free to discharge whomever he or she pleases." Id. at 28.

The plaintiff submits that in being terminated from her at-will employment as Territory Manager for DGI shortly after returning from maternity leave, she was discriminated against on account of her gender and pregnancy. (Docket No. 46, at 3.) The plaintiff claims that while she was on maternity leave, DGI reduced her sales territory from several Caribbean islands down to just the Dominican Republic and Puerto Rico. (Id.) Further, "[a]fter return[ing] from maternity leave, [she] was denied important sales opportunities and she was no longer allowed to travel on behalf of the company." (Id.) DGI dismissed the plaintiff three months following her return from maternity leave. The plaintiff alleges that this dismissal results from impermissible discrimination. (Id.)

After a plaintiff submits a claim for discrimination under Law 80, a defendant must submit a justification for the dismissal covered under subsection (c) of Law 80. P.R. Laws Ann. tit. 29, § 185k. The defendants, for their part, claim that terminating the plaintiff's employment constituted "'just cause' due to the significant decrease in profit that DGI experienced in 2008." (Docket No. 66, at 15.) The defendants proffer evidence of its financial hardship at the time it fired plaintiff, submitting documentation that "DGI had a total drop in sales of $6,958,296.22" from 2007 to 2008. (Id. at 18.) The defendants had a net lost of $512,460 for fiscal year 2008. (Id. at 17.) As a result of this swing in the company's fortunes, "DGI Canada and DGI Florida reduced their combined

workforce from 19 on January 1, 2007 to 17 on January 1, 2008, and then to 11 on January 1, 2009." (Id.)

Under Law 80, fluctuations in a company's financial situation constitute "just cause" in terminating employment. P.R. Laws Ann. tit. 29, § 185b(f). In this event, an employer has the duty to abide by the principles of seniority, or provide evidence that a less-senior employee had better qualifications such as to override the seniority requirement. P.R. Laws Ann. tit. 29, § 185c. Defendants submit, without providing any documentation, that the plaintiff was an inferior employee. (Docket No. 66, at 22-23.) The plaintiff vehemently contests this assertion. "[The d]efendants, of course, claim that [the plaintiff] - despite her bonus, despite her salary increase, despite the expressions of Haygo Demir to the contrary - was simply a terrible employee." (Docket 70, at 14.) I will not entertain the issue of the plaintiff's performance, relative to other employees. "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Local Rule 56(e). The defendants failed to provide any evidence that the plaintiff was a poor performer. Therefore, I will not consider the argument.

Plaintiff's Law 80 claim necessarily comes down to the following issue: what constitutes "seniority"? The plaintiff believes that seniority should be weighed against all members of the same job classification, regardless of where they were

stationed. The defendant argues that seniority should only be weighed against others working in Puerto Rico. Both parties agree that, if the calculus is the former, then the plaintiff has seniority over those not terminated, but if it is the latter, then she is the "low woman" on the totem pole.

Neither party points to, nor can I find, any published federal or state cases on-point. In an unpublished opinion from 2009, Judge Cerezo considered this very issue. Figueroa v. Morgan Stanley Dean Witter, Inc., Slip Copy, Civil 07-2088 (CCC), 2009 WL 3747160 (D.P.R. Nov. 4, 2009). In that case, twenty-year veteran employees of a brokerage firm were discharged from their employment. Id. at *1. The defendant, much like the defendants in this case, "closed its operations in Puerto Rico and 'underwent changes, and reductions in employment [that] were necessary by a reduction in the anticipated or prevailing volume of production, sales or profits.'" Id. The plaintiffs subsequently alleged that the brokerage firm did not adhere to the seniority requirement, as they "continued to operate with one broker who had been employed for less time tha[n] either plaintiff . . . . " Id. The defendant distinguished plaintiffs from that broker, since the remaining position was in the "institutional" division, separate from the "retail" division, where plaintiffs worked. Id.

Judge Cerezo, in determining whether to include international employees in the seniority calculus, stated:

> Inasmuch as the only persons that plaintiffs could identify who had ever transferred out of Puerto Rico to another MSDW branch were two managers who went to Florida, we find that it was not the employer's regular and usual practice to transfer its employees from its Puerto Rico branch to another unit. Because such transfers were not the regular and usual practice, and because the Puerto Rico branch operated with relative independence, plaintiffs' seniority is calculated pursuant to the § 185c(a) proviso by considering only employees of the Puerto Rico branch.

Id. at *6.

Judge Cerezo's conclusion is convincing. The following relevant statements of facts are illustrative:

> 17. Except for layovers in Florida, Plaintiff has been to Florida only one time . . . staying in Florida for approximately 72 hours.
>
> 18 Plaintiff never traveled to Florida on DGI business. She has never seen the offices of DGI in Florida.
>
> . . .
>
> 20. [Plaintiff] started working for DGI in 2005. She started as Territory Assistant for Puerto Rico . . . .
>
> 21. In early 2007, [Plaintiff] was promoted to the position of Territory Manager, originally covering Puerto Rico and the Dominican Republic. A few months later, her territory was expanded to cover Antigua, Barbados, St. Lucia, Dominica and Trinidad as well.
>
> 22. As of the start of calendar year 2008, there were five (5) Territory Managers of the complete DGI operation [none of these shared any countries.]

> . . .
>
> 24. While plaintiff was on maternity leave in June of 2008, her Territory Assistant, Chantel Romeu, was given the position of Territory Manger.
>
> 25. While plaintiff was on maternity leave, Chantel Romeu was made Territory Manager over all of [plaintiff's] territories except for the Dominican Republic and Puerto Rico.
>
> . . .
>
> 27. On October 10, 2008, [Plaintiff] was terminated from her employment.

(Docket No. 46-3, at 6-8.)

Based on those statement of facts, and in light of Figueroa, there are three people for whom the "job classifications" are substantially similar as to be considered for seniority in this case: Illiany Mera, Eunice Arroyo, and Chantel Romeu. Both Illiany Mera and Eunice Arroyo were territory managers covering Puerto Rico. In addition, Chantel Romeu inherited all but two of the territories held by the plaintiff prior to her maternity leave. I believe Ms. Romeu's job classification as territory manager for Antigua, Barbados, St. Lucia, and Dominica and Trinidad to be substantially similar to the plaintiff's job classification as territory manger for Antigua, Barbados, St. Lucia, Dominica and Trinidad, Puerto Rico and Dominican Republic.

Neither party proffered any admissible evidence of Chantel Romeu's effective date of hire. I therefore cannot accurately determine the plaintiff's seniority, relative to the other persons in the same job classification. Additionally, the plaintiff's qualifications, relative to the other territory managers, is a question of fact, best considered outside the province of summary judgment. See 10B The Late Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2732.3 (3d ed.). Because I cannot determine that the plaintiff was either correctly terminated under Law 80, or that plaintiff's Law 80 rights were violated under the seniority requirement, both parties' motions for summary judgment are denied.

D. Title VII

The defendants' third affirmative defense is that DGI Group is not an employer for Title VII purposes because they had fewer than 15 employees at all relevant times. (Docket No. 66, at 2.) "Title VII defines an employer to be 'a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and any agent of such a person." Hirsbrunner v. Martínez-Ramírez, 438 F. Supp. 2d 10, 14 (D.P.R. 2006) (quoting 42 U.S.C. § 2000e(b)).

The defendants' companies are two separate entities, DGI Canada and DGI Florida. Out of the nineteen total employees, eleven were employed by DGI Canada. DGI Florida employed the remaining eight. The defendants therefore argue that neither has the requisite fifteen employees to be considered an employer for Title VII purposes.

The plaintiff argues that the two companies should be counted together. She points to the common ownership, interchangeability of employees between the companies, and the streamlined nature of product order and shipment as evidence of the singularity of DGI. Indeed, the First Circuit has employed the "integrated-enterprise test" in determining whether a single employer exists. See, e.g., Romano v. U-Haul Int'l, 233 F.3d 655, 665 (1st Cir. 2000); Hirsbrunner v. Martínez-Ramírez, 438 F. Supp. 2d at 14.

"Under the integrated-enterprise test, a single employer exists if the following four factors are present: (1) interrelation of operations; (2) common management; (3) centralized control of labor operations; and (4) common ownership." Hirsbrunner v. Martínez Ramírez, 438 F. Supp. 2d at 14 (citing Molina Viera v. Yacoub, 425 F. Supp. 2d 202, 204 (D.P.R. 2006) (citing Romano v. U-Haul Int'l, 233 F.3d at 666)). The plaintiff submits sufficient evidence of the commonality of ownership, operation, and management between DGI Canada and

DGI Florida to be counted as one company for the Title VII numerosity requirement.

The defendants also argue that the numerosity requirement is not met because eleven of the employees were employed by DGI Canada, a foreign corporation. "DGI Canada employees, as citizens from another country working outside the United States, should not be counted to reach the statutory minimum of fifteen employees." (Docket No. 66, at 6 (emphasis omitted).) The defendants cite Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59 (D.D.C. 2002), in support of this assertion. (Docket No. 66, at 7-8.)

The Shekoyan court found that it lacked subject matter jurisdiction over the plaintiff's Title VII claim because the plaintiff was a foreign citizen, working abroad. The appellate court upheld this ruling, finding that "[t]he Congress is under no obligation to extend the protection of its laws extraterritorially to every individual to whom it could do so and courts have read Title VII's extraterritorial jurisdiction provision narrowly." (Docket No. 66, at 6 (citing Shekoyan v. Sibley Int'l, 409 F.3d 414, 421 (D.C. Cir. 2005).)

Shekoyan carries no precedential value. The plaintiff in Shekoyan was a foreign national, working in another country, attempting to bring suit in a United States federal court. The plaintiff in this case is a citizen, working in Puerto Rico. As the plaintiff correctly notes, there is difference as well as distinction in the term

"employee" under Title VII's numerosity requirement than it does for Article III jurisdiction. The plaintiff in Shekoyan had their Title VII claim dismissed for want of personal jurisdiction. This is clearly not the case with this plaintiff.

The plaintiff cites three cases in support of its claim that international employees should be counted towards Title VII's numerosity requirement: Kang v. U. Lim Am., Inc., 296 F.3d 810 (9th Cir. 2002); Morelli v. Cedel, 141 F.3d 39 (2d Cir. 1998); and Hirsbrunner v. Martínez Ramírez, 438 F. Supp. 2d at 10. The defendants, not surprisingly, find fault in all three.

The Ninth Circuit declared in Kang that corporations must count foreign employees when determining Title VII's numerosity requirement. Kang v. U. Lim Am., Inc., 296 F.3d at 816. It stated "[t]he fact that some of the employees of the integrated enterprise are not themselves covered by the federal antidiscrimination law does not preclude counting them as employees for the purposes of determining Title VII coverage." Id. (citing Morelli v. Cedel, 141 F.3d at 44-45). In rejecting the defendant's argument that the definition of "employee" under Title VII prohibits counting foreign employees, the Ninth Circuit read the statutory language as "inclusive rather than restrictive." Id. "The term 'employee' is defined to *include* U.S. citizens employed . . . . " Id. The defendants make no substantive attack on the Kang decision, instead agreeing to disagree with the appellate court. (Docket No. 66, at 12.)

In Morelli, the Second Circuit similarly counted employees of foreign branches of a corporation for the purposes of determining numerosity. And as the defendants correctly point out, the statute interpreted in Morelli was the Age Discrimination in Employment Act, and not Title VII. As the defendants see it, such an application is "misguided," as "contrar[y] to Title VII, ADEA confines its protection to a particular population within the universe of employees it defines." (Docket No. 66, at 10-11.) But this is squarely the inverse reflection to First Circuit precedent. "[W]e have held repeatedly that 'the ADEA and Title VII "stand[ ] *in pari passu"* and that "judicial precedents interpreting one such statute [are] instructive in decisions involving [the other] . . . ."'" Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 47 n.7 (1st Cir. 2005) (quoting Camacho v. P.R. Ports Auth., 369 F.3d 570, 578 n.5 (1st Cir. 2004) (quoting Separión v. Martínez, 119 F.3d 982, 985 (1st Cir. 1997)). Therefore, Morelli carries weight in the present case.

In Hirsbrunner, this court considered whether an international corporation, with sub-corporations in multiple countries, including Argentina, Venezuela, Dominican Republic, should count in determining the proper number of employees under Title VII. In incorrectly arguing that Hirsbrunner "clearly departs from the paramount controversies of the case at bar and any possible correlation is completely unwarranted[,]" the defendants highlight that the appellate court did

not determine that international employees should be counted. (Docket No. 66, at 10.) The latter is true. However, this resulted not from disagreement in principle, as the defendants would like us to believe, but rather, in the ability to decide the case on other grounds. As the court mentioned in a footnote, "even if the Court had been properly briefed [as to the assertion that the international corporation had more than a sufficient number of employees, which went uncontested by the defendant] and thereby was posited to address this question, the Court's disposition of the present motion . . . *would not likely be altered*." Hirsbrunner v. Martínez Ramírez, 438 F. Supp. 2d at 15 n.6 (emphasis added).[3] The defendants argue the plaintiff's "convenient misrepresentation" was "just reckless". (Docket No. 66, at 10.) To the contrary, I find Hirsbrunner persuasive

---

[3] The full footnote reads:

> As Plaintiff's assertion that SMED Puerto Rico and HM Group Corporation collectively employed twenty (20) persons to work in Puerto Rico during the relevant time period is uncontested, for the purpose of summary judgment, the Court need not reach the issue of whether a foreign corporation's employees should be counted in determining whether a defendant meets Title VII's employer numerosity requirement. Moreover, even if the Court had been properly briefed and thereby was posited to address this question, the Court's disposition of the present motion for summary judgment would not likely be altered. *See* Kang v. U. Lim Amer., Inc., 296 F.3d 810 (9th Cir. 2002) (holding that the fact that some employees of an integrated enterprise are not themselves covered by federal anti-discrimination law does not preclude counting them as employees for the purposes of determining Title VII coverage).

Hirsbrunner v. Martínez Ramírez, 438 F. Supp. 2d at 15 n.6 (citations omitted).

in the instant case. In that case, as in the instant case, a single owner controlled multiple corporations, each residing in a different country. Each had employees dispatched throughout. Each failed to have fifteen employees in any individual corporation. Further, both plaintiffs worked in Puerto Rico, and the Title VII suits filed arose out of their employment *in* Puerto Rico. Therefore, I find that both companies should be counted together for the purpose of determining whether the defendants meet the Title VII numerosity requirement.

Finally, the plaintiff submits that "[i]t should be noted that the minimum employee issue is not a jurisdictional one, but rather an element of the cause of action." (Docket No. 46, at 17, n.8 (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 515 (2006)). In Arbaugh, a former bartender brought a Title VII claim against her former employer, claiming sexual harassment. Arbaugh v. Y & H Corp., 546 U.S. at 507. Following a jury verdict in favor of the plaintiff, the defendant filed a motion to dismiss, due to lack of subject matter jurisdiction. The defendant had less than the statutorily-required fifteen employees. Despite the magistrate judge's distaste for the slothful timing of the motion, she granted the motion, deciding that the numerosity requirement was a jurisdictional requirement.

The Supreme Court, in reversing the ruling of the district court (and the subsequent affirmation by the appellate court), concluded that the numerosity issue is an element of the cause of action, and not determinant of subject-matter

jurisdiction. Arbaugh v. Y & H Corp., 546 U.S. at 513-14. It noted that "the 15-employee threshold appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" Id. at 515 (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982)). In so noting, the Court concluded that the numerosity requirement is an element of the plaintiff's claim. Arbaugh v. Y & H Corp., 546 U.S. at 516.

While noting the Supreme Court's ruling, the numerosity question before me is distinct. The question is not one of fact, whether the defendant *had* fifteen employees; rather, it is a question of law, whether a portion of those employees should be *counted* in the numerosity calculus. As such, my determination will necessarily resolve the defendants' affirmative defense. And since that affirmative defense is premised on the numerosity requirement, it is necessarily a jurisdictional question. When "subject matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own" instead of having a jury as the proper trier of fact. Arbaugh v. Y & H Corp., 546 U.S. at 514 (citing 5B The Late Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004).

As the defendants themselves admit, DGI had between 17 and 19 employees at the relevant times. (Docket 66, at 17.) I have determined that DGI Canada's employees need to be amalgamated with DGI Florida's employees to

accurately reflect the employee headcount. They had more than fifteen employees, making them an "employer" under the definition articulated in Title VII. Therefore, the defendants' affirmative defense number three is dismissed.

Finally, defendants withdraw its affirmative defense of insufficient service of process. Therefore, affirmative defense number two is dismissed.

CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment on the defendants' affirmative defenses is GRANTED. (Docket No. 46.) Necessarily, the defendants' motion for summary judgment on the two defenses is DENIED. (Docket No. 66.) The plaintiff's motions to strike Exhibits is GRANTED. (Docket No. 71.) The plaintiff's motions to strike the defendants' errata sheet is DENIED. (Docket Nos. 68 & 69.) Finally, the summary judgment motions on the Law 80 claim is DENIED for both plaintiff and defendants. (Docket Nos. 46 & 66.)

At San Juan, Puerto Rico, this 11th day of January, 2011.

S/ JUSTO ARENAS
Chief United States Magistrate Judge