IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EUNICE ARROYO-PEREZ,<br><br>Plaintiff,<br><br>v.<br><br>DEMIR GROUP INTERNATIONAL a.k.a. DGI GROUP; and HAYGO DEMIR, a.k.a. HAYGO DEMIRIAN,<br><br>Defendants. | CIVIL NO. 09-CV-02231(CVR) |

## DEFENDANTS' POST STATUS CONFERENCE MEMORANDUM ON COMPELLING PRODUCTION OF TAX RETURNS AND OF CONTINUING DISCOVERY

Defendants, DEMIR GROUP INTERNATIONAL ("DGI") and HAYGO DEMIR, by and through their undersigned counsel, hereby file this Memorandum on Compelling Production of Tax Returns and of Continuing Discovery.

### CONTINUED DISCOVERY INCLUDING OF WITNESSES IN ST. THOMAS AND ST. MAARTEN

At the May 5, 2011 Status Conference, this Court expressed concern about continuing discovery in this matter under the belief that there was a prior discovery cutoff and counsel for Defendants was unable to answer the Court's questions at the status conference about a discovery cutoff. A review of the trial orders in this case [DE 34-37] reflects that no discovery cutoff was ever included in the Court's pretrial orders or in any other order entered by Magistrate Judge Arenas. Indeed, at the August 20, 2010 Scheduling Conference before Magistrate Judge Arenas, Ms. Berkan, counsel for Plaintiff, expressly requested that there be no discovery cutoff and that discovery could proceed up until the commencement of trial, as, she said, she requests in

all her cases. Docket Entry 34 states that "Discovery cutoff is TBD." There was no subsequent order regarding any discovery cutoff.

Even if there was an Order delineating such a discovery deadline, Magistrate Judge Arenas entered an Order on February 17, 2011 (DE 105) which vacated pretrial and trial settings.

Part of the reason for not having a discovery cutoff was Defendants' counsel's concern about the short time frame in this case, given the goal that the case be ready for trial before Magistrate Judge Arenas' retirement in April 2011. Magistrate Judge Arenas informed the parties at the August 2010 Scheduling Conference that the deadlines that he did set were not set in stone, that he recognized the ambitious schedule that the parties had set, and that he would move the deadlines upon a reasonable request. This is what was requested in the Motion to Continue Trial [DE 96] in which the deadlines were discussed, and which resulted in the Order Granting the Motion to Continue Trial [DE 104] and the Order vacating all pretrial and trial settings [DE 105]. Counsel certainly relied upon the fact that the Court did not set any type of discovery deadlines in this case, nor did Plaintiff's counsel seek or abide by one.

Indeed, both parties acted in accordance with the premise that there was no discovery cutoff and have taken discovery until the Order continuing the trial, and after the continuance of the trial. Both parties have taken depositions since the trial was continued on February 17, as recent as Ms. Berkan's deposition of Vijay Khemlani, just two weeks ago on April 18, 2011.[1] Indeed, her email of December 17, 2010 denotes the many depositions that still needed to be completed in 2011, the agreed upon date of Ilianny Mera's first deposition of January 18, and several references to her continued willingness to complete discovery shortly before trial. The

---

[1] There seems to be a belief that there was a discovery cutoff in December 2010. Numerous depositions were taken by both parties in 2011, including Ilianny Mera, as discussed herein (which was divided into three portions, two of which occurred *after* the trial was continued, Joe Salva (January 25), Belinda Rivera and Carmen Perez (January 26), Haygo Demir (February 2), Wendy Plaza (February 3), and Nick Burd (February 16).

email is attached as Exhibit A. Ms. Berkan even alluded that she may take the depositions of some "missing in action" witnesses if they were located. If she was permitted to take the depositions of newly discovered witnesses, wouldn't the same be true for the Defendants?

It is also important to note that the identity of these approximately seven St. Maarten and St. Thomas witnesses who Defendants seek to depose were unknown to the Defendants until April 11, 2011 and was the result of a Court Order compelling Ilianny Mera to identify these witnesses [DE 109]. These witnesses, according to Ms. Mera (a former DGI employee), were at dinners where Mr. Demir allegedly made statements about pregnant women working at DGI. Defendants believe that these witnesses, through extremely short depositions, will testify that Ms. Mera was untruthful and that they never observed Mr. Demir make the statements that Ms. Mera says he made.

Ms. Mera's deposition was taken in three parts. During the first, she was examined by Plaintiff's counsel and Defendants' counsel began his examination. The parties were unable to conclude the deposition on that day because Ms. Mera's counsel had another commitment. After that, Defendants sought a continuance of the trial. Part of the grounds for continuance was that Ms. Mera's deposition had to be continued <u>and</u> her testimony required the additional depositions of these St. Maarten and St. Thomas dinner guests. This Court granted the Motion to Continue Trial [DE 104] and stated therein as one of the bases for continuance that, "Most importantly, the defendants seek a level playing field at trial and must take depositions to counter Ms. Mera's testimony." This Court thus permitted these depositions to occur.

Subsequently, Ms. Mera's deposition continued. Ms. Mera refused to identify the individuals who allegedly witnessed Mr. Demir's statements. This necessitated the filing of an Emergency Motion to Compel Deposition Testimony of Ilianny Mera [DE 106], which was

granted one day later. Magistrate Judge Arenas ordered that "the names of customers is to be provided as well as an address where deponent can be contacted."[2] [DE 109] Magistrate Judge Arenas' prior orders [DE 104 and 109] validate the Defendants' position that there was no discovery cutoff and that Defendants are entitled to this discovery that is necessary to level the playing field.

## HECTOR ROBLES' TAX RETURNS

Mr. Robles is Plaintiff Eunice Arroyo's husband. Ms. Arroyo has complained that her loss of employment at DGI has caused her extreme financial hardship and has detailed that financial hardship through discovery. This purported financial hardship has included her need to borrow money, move out of the house that she and her husband own and live in a cheaper home, sell belongings, and cash in retirement accounts. She has also testified that her husband has suffered, during the same time period, decreased income. Mr. Robles is an engineer whose projects decreased as a result of the depressed real estate market in Puerto Rico.

When deposed as to the amount of her husband's income and how it has decreased, Ms. Arroyo was unable to answer these questions. As such, Defendants have requested the production of Mr. Robles' tax returns (he does not file jointly with Ms. Arroyo) to demonstrate how his income has decreased during the relevant time period. Ms. Arroyo has objected to this production - - not because she is not in possession of the requested documents - - but because she contends that these documents are not relevant. Because of the reasons expressed in Defendants' Motion to Compel and the Reply thereto [DE 44 and 51], Plaintiff submits that these documents are extremely relevant and necessary to prove that any financial hardship suffered by Ms. Arroyo and her family were not solely caused by her loss of employment at DGI, but also because of Mr.

---

[2] Ms. Mera announced at her deposition that she was moving and refused to give her forwarding address. Defendants requested this in case additional discovery of Ms. Mera was necessary.

4

Robles' reduced income.

Tax returns are subject to discovery as long as they are relevant to the subject matter of the action. *Halperin v. Berlandi*, 114 F.R.D. 8, 11 (D. Mass. 1986); *Heathman v. United States District Court for the Central District of California*, 503 F.2d 1032 (9th Cir. 1974); *Powell v. Merrimack Mutual Fire Insurance Company*, 80 F.R.D. 431, 433 (D. Ga. 1978); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624, 627 (S.D. Fla.1977). As discussed above, Mr. Robles' tax returns are relevant.

The Court took issue with whether it could compel the production of documents from a non-party. Again, Ms. Arroyo does not seem to argue that she does not have possession of her husband's tax returns. In the event that Ms. Arroyo claims that these documents are in the possession of her husband, and not her, or if this Court requires a subpoena be served upon Mr. Robles' for these tax returns, Defendants will be happy to effectuate service of such a subpoena upon Mr. Robles. These tax returns, however, are critical to defend Ms. Arroyo's damages claim and these documents should be compelled.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on May 6, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all attorneys of record.

**Ferraiuoli Torres Marchand & Rovira, P.S.C.**
**Attorneys for Counter Plaintiff**

Plaza Building, Suite 403
#221 Ponce de León Avenue
San Juan, Puerto Rico 00917
Telephone: (787) 766-7000
Fax: (787) 766-7001

By:  *s/María Judith Marchand-Sánchez*
USDC-PR No. 206602
nmarchand@ftmrlaw.com

*s/Juan R. Rivera-Font*
USDC-PR No.221703
jrivera@ftmrlaw.com

**SCHLESINGER & COTZEN, P.L.**
**Attorneys for Counter Plaintiff**
799 Brickell Plaza, Suite 700
Miami, Florida 33131
Phone: 305-373-8993
Fax: 305-373-8090

By: *s/Michael L. Cotzen*
Florida Bar No. 166472
mc@scflalaw.com