IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EUNICE ARROYO-PEREZ<br><br>    Plaintiff<br><br>    v.<br><br>DEMIR GROUP INTERNATIONAL,<br>a.k.a DGI GROUP; and<br>HAYGO DEMIR, a.k.a HAYGO<br>DEMIRIAN<br><br>    Defendants | CIVIL NO. 09-2231 JA<br><br>JURY TRIAL DEMANDED |

### MOTION IN LIMINE

**NOW COMES THE PLAINTIFF,** through undersigned counsel, and respectfully moves this court for an order IN LIMINE, prohibiting the defendants from using certain exhibits at trial and from mentioning them in their opening statement.

### I. INTRODUCTION

The documents in question are summaries, some in the form of pie charts, and others in the form of tables. All were prepared by the defendants *in the litigation context*, for the express purpose of proving plaintiff's purportedly poor performance as a DGI employee. They are improper summary documents, inadmissible under Rule 1006 of the Federal Rules of Evidence, given that the underlying documents on which the summaries are purportedly based have never been made available to the plaintiff. They are also irrelevant and in any event subject to exclusion pursuant to Rule 403 of the Federal Rules of Evidence.

Since this is a jury trial, the potential harm which would be wrought by the admission of such documents is particularly great. Defendants have prepared glossy pie-charts and other summary documents, to present to the jury, precisely to demonstrate their notion that plaintiff was not a good employee. These documents, prepared in the litigation context, do not reflect the analysis which was done at DGI, *when plaintiff was dismissed*. This was admitted by defense counsel, Michael Cotzen, in response to an inquiry by the undersigned, in which he states that "there are no written documents that would demonstrate ... that at the time when Ms. Arroyo's discharge was being considered, the company had produced the kind of analysis as to sales which is not reflected in the BONUS calculations through 2008, but rather in an analysis of percentage of sales actually written." *See, Exhibit A, Letter from Berkan to Cotzen, Dec. 1, 2010, and Exhibit B, email from Cotzen to Berkan, December 2, 2010.*

In other words, *while* Ms. Arroyo was employed, the efficacy of her work was measured by one method, which showed her as being quite successful. *After* she filed her legal claim, however, *new numbers* were run, using a different methodology, and lo and behold, she came up wanting. Now, in a *jury* trial, the defendants propose presenting these *summary documents*, based on this new, litigation-ready methodology, without so much as producing to opposing counsel and the court the contemporaneous supporting documents on which the new calculations are based, and which must, themselves, be admissible in evidence.

The documents subject to this request *in limine* are misleading and inadmissible in evidence.

## II.  THE DOCUMENTS

The questioned documents are as follows:

**Defendants' Identification # 65- the PIE CHARTS**

The PIE CHARTS which are identified in the proposed pretrial order as Identification # 65 are not admissible evidence.  Not only are these charts and supporting numbers inadequately authenticated, there is no conceivable way to ascertain their veracity *via* reference to the *underlying* documents.  These PIE CHARTS were prepared in the litigation context*, after* plaintiff filed her claim of pregnancy and gender discrimination.  The numbers reflected in the charts are not reflected in other, admissible documents which are too "voluminous" to present in evidence and properly subject to summary evidence of this nature.

The glossy pie charts, prepared over a period of time by DGI and its staff, for the express purpose of countering plaintiff's claim, are improper summaries, with no demonstration of compliance with Rule 1006 of the Federal Rules of Evidence. Defendants cannot demonstrate that these documents are based on other voluminous documents which, themselves, would be *admissible* in evidence.  Nor have they ever provided opposing counsel with the underlying documents.

**Defendants' identification #'s 59, 62 and 63:**  These are summary documents, which purport to establish the following: Shipped orders for Arroyo's territories

3

between 2006 and 2008 (#59); DGI Gross Sales, by territory, from 2005 to 2008; and Territory Manager Bonuses from 2005 to 2009.

These documents, also prepared either by DGI or its counsel in the context of this litigation likewise fail to comply with Rule 1006. At no point have the defendants even deigned to identify which underlying documents were used to create these documents. Nor have the defendants shown that the underlying documents comply with the voluminousness requirement of the evidentiary rules.

### III. ARGUMENT

#### A. Rule 1006

Rule 1006 is an exception to the "best evidence" rule, allowing summary documents the accuracy of which is not in question. The requirements of the rule assure that accuracy and seek to avoid the risk of a witness "stretch[ing] the truth in preparing a chart ..." *Wright and Gold, Federal Practice and Procedure, Evidence §8042, page 519.* Foremost among the safeguards built into the Rule is the requirement that "the originals or duplicates shall be made available for examination." *Rule 1006.* As noted by Wright & Gold, "this gives the parties a chance to detect inaccurate summaries and also may serve as a disincentive to fraud." *Wright and Gold, op. cit, at page 519.*

In the case at bar, the underlying documents have not been made available to the plaintiff. Although Rachel Doherty, Vice President of Finance and Operations, claims to have seen the underlying documents for the PIE CHARTS, these documents *still* have not been produced. This is despite the fact that plaintiffs counsel made

repeated requests for the same and despite the fact that according to Ms. Doherty "they are in our computer," and defense counsel indicated that the company would "print out the documents."  *See, Exhibit F, RD depo, pages 102-103*.

Accordingly, it is impossible for the defendants to establish the proper foundation for these summaries.  There is no way for the plaintiff, or the court, to assess their accuracy. Nor have the defendants established that the underlying documents comply with the "voluminousness" standard.

The context in which these documents were prepared speaks volumes about their admissibility. During Ms. Arroyo's tenure at DGI, according to DGI's interrogatory answers, sworn to under penalty of perjury by Haygo Demir, the bonus formula "was based on the *growth in markets for each Territory Manager." See, Exhibit C, Excerpts from Interrogatory Answers.* Once Ms. Arroyo filed her claim, however, DGI struggled to find a formula which would justify its position in this litigation, even if that formula was *never* used by DGI when it was evaluating its employees.

On February 25, 2009 (within days of plaintiff's presentation of her UAD charge and the filing of her first lawsuit)[1], Mr. Demir wrote to DGI Vice President, Krystal Williams, regarding some sales figures she had produced for the explicit purpose of trying to develop his *defense to this lawsuit*, :

---

[1] The first lawsuit (based exclusively on diversity jurisdiction) was voluntarily dismissed, while plaintiff awaited the federal right-to-sue authorization.

> Thanks K.  These are good for the *bonus part ....* but I love [sic] to see *the total sales per island per year* as opposed to Bonus." *See, Exhibit D, email correspondence between Demir, Williams and Doherty, Feb., 2009, at page 1*

It was only *after* this request in the *context of litigation* that Ms. Williams developed the sales per island per year which defendants are now attempting to use to justify a decision which DGI and Mr. Demir made *months* before the tables and Pie Charts were ever prepared.

In her deposition, taken in early December of last year, Ms. Williams admitted that she developed numbers *in the course of this litigation:*

> Q:   ... Have you, in the context of preparing for your deposition reviewed any papers?
>
> A:   Uh... No, I'm ... I'm .... But I am ... I've had to prepare sort of like .... I had to *help him do some numbers and stuff ....*
>
> Q:   .... You're answer was no, but in the course of the litigation you have done something.  And can you repeat what it is that you've done....
>
> A:   I've helped to prepare sales numbers ....    .... I put numbers together for Haygo *for the lawsuit ...*
>
> Q:   .... Put numbers together?
>
> A:   Yes, I provided some information .... off our order ledger.
>
> Q:   And what was the nature of the information you provided?
>
> A:   Sales numbers .... by terri ... uh, island sales numbers ....  .... It was done by year. *Exhibit E, Excerpts from Kristal Williams depo, pages 6 to 9.*

In the course of this litigation, the defendants have revised their numbers on more than one occasion. Numbers relating to total sales changed over time, with total sales and sales per Territory Manger being altered as DGI came up with new summary documents. Defendant Haygo Demir testified that Krystal Williams worked on these numbers *"in the context of this particular case."* The company "looked at the numbers more closely for '07 and '08 in the context of this case, and "these are the numbers we came up with, and we submitted them as supplements." *Exhibit F, Excerpts from Haygo Demir (HD) depo, page 178.*

Defendants now seek to use new numbers to justify the decision to dismiss plaintiff, which they made in the summer of *2008,* by reference to summaries and Pie Charts which were first *prepared in 2010. Id, HD depo, page 179; See, also Exhibit G, Excerpts from Rachel Doherty (RD) depo, page 129.* The breakdown in the PIE CHART was *not* the breakdown used to consider the performance of DGI Territory Managers when plaintiff still worked at the company, or to measure her value to DGI at the time they decided to terminate her.

The company has never provided *any* evidence that the numbers were actually run during the years in question, *before* this litigation began. In fact, defense counsel has *admitted* that there are no documents at that time which reflect that these numbers were used with respect to employment decisions.

The summary documents clearly fail to comply with Rule 1006. Whatever the underlying information that was used by DGI, it was not provided to plaintiff. A party

7

cannot simply conjure up a chart, say that the chart reflects some unknown documents which are not delivered to opposing counsel, and expect a jury to receive the summary *in lieu* of competent evidence.

### B. Rules 401 and 403

Beside the failure of the defense to comply with the provisions of Rule 1006, there are additional reasons for excluding the documents — Rule 401 (relevancy) and Rule 403 (Exclusion of Relevant Evidence on Grounds of Perjudice or Confusion).

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." *Rule 401, FRE*. It must be a matter of consequence, with impact upon a factual issue in controversy.

In the case at bar, the issue is why DGI decided to terminate Eunice Arroyo, as opposed to other Territory Managers whose performance was inferior to her and/or had less seniority than she had. The decision was made during the summer of *2008*, not in *2010*. The litigation documents referenced above are not relevant to any issue in this case; they are nothing more and nothing less than post-litigation summaries and analyses as to matters *which were analyzed in a different manner when the employment decisions in this case were made*.

The PIE CHARTS are based on analyses which did not have any impact on the decisional process in 2008. The other summary documents contain comparisons which are plainly irrelevant, such as reference to the years 2006 and 2005, when plaintiff was

not even a Territory Manager.  Clearly, such evidence does little to make any fact in issue in this case "more probable."

Even if the documents were deemed to be relevant, moreover, any minimal probative value they may have is "substantially outweighed" by the prejudice which would result from their admission and by the confusion it would create in this jury trial.  *See, Rodríguez-Hernández v. Miranda*, 132 F.3d 848 (1st Cir., 1998).  The PIE CHARTS are particularly troublesome in this regard.

The defendants have gone to great lengths to produce these glossy, multi-colored diagrams to demonstrate their point that plaintiff was simply a terrible employee.  This clearly is a post-hoc analysis, presented in an appealing manner, with the explicit intention of confusing the jury.  Even if these documents *did* comply with Rule 1006, and even if they *were* relevant, the harm created would still far outweigh any benefit gained by their admission.

## **Relief Requested**

In light of the points set forth above, it is respectfully submitted that an Order *In Limine* is justified.  The defendants should not be allowed to submit into evidence the Pie Charts and the other summary documents they prepared for the purpose of this litigation.  They should be instructed that on Opening Argument, as well as in the evidentiary context of the trial, itself, and of course, in closing argument, the

defendants should be prohibited from mentioning, and certainly from *displaying* the Pie Charts and other summary documents.

Respectfully submitted in San Juan Puerto Rico, this 9th day of December, 2011

**Berkan/Mendez**
**Calle O'Neill G-11**
**San Juan, Puerto Rico 00918-2301**
Tel.: (787) 764-0814
Fax.: (787)250-0986

By:/s/ Judith Berkan
Judith Berkan
US DC No. 200803
berkanj@microjuris.com

/s/ Mary Jo Méndez
Mary Jo Méndez
mendezmaryjo@microjuris.com