**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| EUNICE ARROYO-PEREZ<br>        Plaintiff<br><br>             v.<br><br>DEMIR GROUP INTERNATIONAL,<br>a.k.a DGI GROUP; and<br>HAYGO DEMIR, a.k.a HAYGO DEMIRIAN<br>        Defendants | CIVIL NO. 09-2231 JA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OMNIBUS OPPOSITION TO FOUR MOTIONS IN LIMINE**

**NOW COMES THE PLAINTIFF,** through undersigned counsel, and respectfully presents this Omnibus Opposition to the four Motions in Limine presented yesterday by the defendants. *Docket Nos. 134, 135, 136 and 137.*[1]

Due to the short time frame in which the undersigned must complete this Opposition,[2] this opposition is presented in summary fashion, in one Omnibus filing.

**I. Introduction - plaintiff's claim**

The parties to this action have filed a lengthy proposed pretrial order, which sets forth in great detail their respective contentions.  Plaintiffs will refer extensively to the proposed pretrial order in this Opposition, because it demonstrates beyond question the *admissibility* of each and every one of the pieces of proof which defendants seek to exclude.

---

[1] For ease of presentation, the plaintiff is submitting this Omnibus response.  Since defendants' four motions contain a total of 27 pages, plaintiff assumes that this Opposition, which has 22 pages, complies with the page limit requirements of the local rules.

[2] The motions in limine were filed late yesterday.  This morning, the court set a deadline of Tuesday, November 15th, to answer the same. The undersigned will be traveling outside of Puerto Rico later this week, as previously informed to the court. Several hours today were consumed in the preparation for and taking of the deposition of the Sgt. Guevarez, concerning the use of chemical agents against protesters at the Capitol Building on June 30, 2010, in a deposition ordered by this court in the case of *Hiskes v. Figueroa-Sancha, et al., Civ. No. 10-2246.*

**A. Pregnancy and gender discrimination**

1.1 In her action before this court, plaintiff Eunice Arroyo has alleged that the reduction of her territory as a DGI Territory Manager during her maternity leave, and the decision to dismiss her shortly after her return, were based on impermissible gender and pregnancy discrimination.

1.2  Plaintiff asserts that as soon as she announced her pregnancy in the fall of 2007, her days were numbered at DGI.  She notes that women who work at DGI (who make up the bulk of its workforce which at times relevant to this complaint numbered between 15 and 20 employees) never return after they give birth, due to the hostile attitudes of Mr. Demir with respect to pregnant women.

1.3 She also affirms that the company pressured her during her pregnancy, *inter alia,* questioning whether she intended to return to work thereafter, and even stating, falsely, that she had agreed to a six-month unpaid leave after the birth of her child.

1.4 To meet her evidentiary burden of demonstrating the pretextual nature of the defendants' explanations for their employment decisions, and to show that the real reason was discrimination, plaintiff has pointed to "hostility to pregnant employees and those with maternal responsibilities," which was manifested "not only with respect to Ms. Arroyo." *Proposed Pretrial Order; Docket #133 ("PT"), at page 8.*  It was manifested in the unwritten rule pursuant to which mothers who recently gave birth did not return to DGI, as well as in negative comments about pregnant women. *Id.*

1.5  In point of fact, María Cabiya, a Florida DGI employee and the *only other employee who was pregnant in 2008*, was pressured into leaving DGI *while she was pregnant*.  The time frame is certainly not remote.  On October 11, 2008, plaintiff was informed that she was being "downsized," and within *days* thereafter, Ms. Cabiya was pressured into leaving DGI, largely due to her pregnancy-related absences from work.

2

**B. Retaliation**

1.6 Ms. Arroyo also alleges that she was subjected to retaliatory acts on the part of DGI and defendant Haygo Demir ("Demir") after she presented a claim before the EEOC and the UAD, the Puerto Rico agency charged with consideration of discrimination complaints.

1.7 The company's reaction to plaintiff's discrimination claim was swift, illegal and retaliatory. On December 17, 2008, Mr. Demir conditioned plaintiff's receipt of thousands of dollars of *earned compensation* on the withdrawal of her claim ("written confirmation that the legal action you have started against DGI has been cancelled.") *See, Dec. 17, 2008 letter from Demir to Arroyo, Exh. A.*[3]

1.8 The company also demanded return of certain jewelry which plaintiff had received as samples for her work at DGI. *Id.*

1.9 On February 4, 2009, plaintiff filed her first complaint before this court, invoking local law and federal law claims (while mentioning that she was awaiting the receipt of the right to sue authorization from the EEOC). *See, Civ. No. 09-1102.*

1.10 Defendants' response to the initial lawsuit was to request a change of venue to the U.S. District Court for the Southern District of Florida. *See, Motion for Change of Venue, Civ. No. 09-1102.*[4]

1.11 This was quickly followed by a demand letter against plaintiff (marked as Exhibit UU in the pretrial), in which defendants demanded "treble damages" in excess of $90,000 pursuant to Florida's "civil theft" statute and informed plaintiff that "failure to comply will result in the immediate

---

[3]In response, plaintiff noted that she would be willing to return the jewelry if she were paid her compensation, but that she could not "cancel the legal action against DGI." *Exh. B, email from Arroyo to Demir, Dec. 29, 2008.* Thus, a stalemate ensued.

[4]This same request was later denied by Magistrate Judge Justo Arenas, in the context of the instant case.

3

filing of a lawsuit," and that she should "GOVERN YOURSELF ACCORDINGLY." *See, letter from Cotzen to Arroyo and Berkan, June 24, 2009, Exhibit C hereto.*

    1.12 Plaintiff eventually withdrew the first action she filed, based on the fact that Judge Besosa had dismissed *sua sponte* the federal claims. She did so in the interest of judicial economy, preferring to wait until she received the required right-to-sue authorization from the federal agency. *See, Exhibit D hereto, Notice of Voluntary Dismissal in 09-1102, Docket #13, presented on July 2, 2009 and Order granting dismissal, Docket #14, later that day.*

    1.13 Apparently emboldened by what they erroneously believed to be the sought-after "cancellation" of the law suit, defendants, through the Miami office of Schlesinger and Cotzen, issued a second letter, this time to plaintiff's counsel, insisting that plaintiff's employment discrimination action "is completely without merit ... [as] sufficiently demonstrated by a review of the documents in the case, as well as the basic facts." *See, Exhibit E, Cotzen letter to Berkan, July 21, 2009.*[5] Mr. Cotzen also indicated that in the litigation context, "we will gladly introduce this issue [concerning the jewelry] to a judge and/or jury." *Id.* The defendants, however, did nothing to institute their promised suit against Ms. Arroyo at that time.

    1.14 The next procedural event of relevance was the re-filing of plaintiff's lawsuit against DGI and Demir, after Ms. Arroyo received the EEOC right-to-sue. The defendants were served on *January 6, 2010. See, Docket #4 in the case at bar.*

    1.15 Again, the retaliation was extraordinarily *swift.* On *January 28, 2010*, barely three weeks

---

[5] Plaintiff's response to the earlier demand was to indicate her willingness to place the jewelry in escrow, while this case was being litigated, as long as defendants did the same with respect to the monies they owed plaintiff. *See, Berkan letter to Cotzen, July 21, 2009, Exhibit F hereto.*

after service, the defendants instituted a clearly frivolous lawsuit in the State of Florida, where plaintiff had not stepped foot for some two decades, based on an affidavit from defendant Demir which was knowingly false. (Thereafter, the case was dismissed due to lack of personal jurisdiction, and defendants were ordered to pay attorneys fees as a sanction, but only after plaintiff had incurred in close to $40,000 in legal costs for defending that action.)

## II. A summary of pertinent contentions by DGI and Demir

2.1  Defendants deny that they engaged in any discriminatory or retaliatory actions.  They claim that the decision to dismiss plaintiff was based on economic factors and the need to "downsize."

2.2  Although the "downsizing" explanation was the one offered at the time of plaintiff's discharge (and belied by DGI management's own documents), they have also come before this court offering other explanations.

2.3  The newly offered reasons for terminating Ms. Arroyo relate to two areas: poor sales and poor communication.

2.4  In support of the " poor sales" contention, defendants seek to introduce documents produced in the litigation context, including glossy pie charts.  Plaintiff has moved to exclude such documents, observing that they are improper summaries which fail to comply with Rule 1006 of the Federal Rules of Evidence.  Plaintiff also notes that the analysis reflected in these documents was *not* the analysis used by DGI *while plaintiff worked there* and at the time of her termination, particularly in light of her high bonus for productivity and growth attained the year before her discharge. *See, generally, Docket #138, plaintiff's Motion in Limine.*

2.5  With respect to the plaintiff's " poor communication," the defendants intend to present the testimony of Krystal (Williams) Sweeney, a high-level DGI employee based in Canada.

5

2.6  According to the defense,  Ms. Sweeney will testify that plaintiff's "communication skills" were " poor" and that "Sweeny made pleas with Arroyo to more effectively communicate with her, as her supervisor." *See, PT, at page 34.*

2.7  Defendants have gone so far as to state that Ms. Sweeney was the one who " suggested that Demir terminate Arroyo's employment months before her actual termination" (*during* Ms. Arroyo's pregnancy or maternity leave). *Id.*


### III Defendant's Motions in Limine and Plaintiff's Response thereto

### A. Ilianny Mera's testimony about Demir's comments regarding pregnant women

Docket #134 concerns the testimony of Ilianny Mera, a former DGI Territory Manager for DGI, who was deposed over three days earlier this year.

Ms. Mera, a long-term DGI employee, testified to certain comments made by Mr. Demir in her presence which showed distaste for pregnant women.  Among other things, Ms. Mera said that Mr. Demir would make jokes about pregnant women, and that the word was out at DGI that pregnant women would not be able to work at DGI, that "it was like the end of it" for Territory Managers who became pregnant.  *See, Ilianny Mera Deposition excerpts, Exhibit G hereto, at pages 89-95.*[6]  Based on jokes and comments by Mr. Demir, Ms. Mera believed that when plaintiff announced her pregnancy, Ms. Arroyo's "days at DGI were numbered." *Id., page 89.*  This was because Mr. Demir made " jokes about people being pregnant and not being able to ... work for DGI" *Id., page 90,* and " how it ... doesn't work for DGI, period." *Id., page 93.*

---

[6]For some reason, the defendants included only selected parts of Ms. Mera's testimony in their Motion in Limine, *Docket 134-1.*  The complete Q and A on this issue at the January 19th deposition is appended hereto as Exhibit G.

Defendants have moved to exclude this testimony, which they characterize as impermissible hearsay. They also say that in light of Ms. Mera's perception that Mr. Demir was making " jokes," and defendants' contention that he is " a good-humored, joking person," *Docket 134, page 2,* the remarks should be excluded under Rule 403 of the Federal Rules of Evidence. Finally, defendants assert that because they sought to take the depositions of the customers (three months *after* they first heard this testimony from Ms. Mera and then, only after the original trial date), they would be unduly prejudiced by not being able to present some of these witnesses, male friends and customers of Mr. Demir, who would undoubtedly deny he made the comments in their presence.

## B. **Plaintiff's Opposition to the In Limine Requests regarding the Demir comments**

### i. **Mr. Demir's remarks about pregnancy are not hearsay**

Defendants' contention that Ilianny Mera's testimony regarding Mr. Demir's comments about pregnant women is *hearsay* is based on a fundamental misunderstanding of the hearsay rule. While defendants acknowledge that a statement is hearsay only if it is being offered for the *truth* of the matter asserted by the out-of-court declarant, they misconstrue the meaning of this provision.

For defendants, the issue is not the purpose for which the remarks are admissible in evidence, but rather the *effect* thereof on the truth of the " pregnancy discrimination as alleged by Ms. Arroyo." In other words, defendants object to the remarks because precisely because they are *probative* of the underlying central issue in this case — the pregnancy discrimination alleged by Ms. Arroyo. The "hearsay" objection is, in reality, an objection that the inferences which properly can be drawn from this testimony are *prejudicial* to defendants' case, as well they should be.

This kind of evidence is routine in discrimination cases. Remarks by decision-makers which demonstrate their hostility towards the protected class are clearly *admissible* to demonstrate that the real

reason for the adverse employment action was discrimination.  The First Circuit has consistently recognized that " discriminatory conduct is recognized as probative in an employment discrimination on the issue of motive and intent."  _Brown v. Trustees of Boston University, 891 F.3d 337, 349 (1ˢᵗ Cir 1989)_ (discriminatory remarks about other female professors, made by the President of the University.") Such comments " provide circumstantial evidence about the prestextual nature of [the employer's] proferred reasons for [the] dismissal... [and] could lead a jury to conclude that [the] proffered reasons for firing [the plaintiff] were actually a pretext for discrimination.  _Santiago-Ramos v. Centennial, 217 F.3d 46, 54-55 (1ˢᵗ Cir., 2000)_.  Such comments " add color to the decision-making process at [the company] and to the reasons given for [her dismissal]. _Id, 56 (internal cites omitted)._

Clearly, this is _not_ hearsay.  Plaintiff is not attempting to prove that pregnant women could _not_ perform the work of DGI, but rather that Mr. Demir _believed this to be the case._  As noted by the Sixth Circuit in _Tally v. Bravo Pitino Restaurant, 61 F.3d 1241, 1249 (6ᵗʰ Cir 1995)_, concerning racist remarks made by a restaurant owner, " the disparaging ... comments allegedly made by [the owners] were not offered to prove the truth of the statements but to demonstrate the .... attitudes of [the offenders]....  Accordingly, the statements are not hearsay."[7]

### ii. The comments should not be excluded pursuant to Rule 403

Defendants' next point is somewhat inscrutable.  Because Ms. Mera supposedly viewed the comments to be " jokes," the defendants contend that the remarks should be excluded pursuant to Rule 403.  According to defendants, the joking nature of the comments means that their probative value is substantially outweighed by the potential for prejudice and that the remarks " can only prejudice" and

---

[7]The Sixth Circuit in _Tally_ also noted that even if such remarks _were_ hearsay, they would be "admissible under the hearsay excpetion for statements of the declarant's then existing state of mind." _Id, at 1249-50._  Moreover, they are remarks of the _defendant,_ Mr. Demir, who will testify in court.

" mislead" the jury.  *Docket #134, page 2*.  In all candor, this "403" issue is completely nonsensical.

Defendants also seem to be concerned that Ms. Mera, whose deposition lasted many hours, over three separate sessions, is unavailable for trial.  What they neglect to mention, however, is that Mr. Demir will certainly be present at trial, and he will undoubtedly *deny* what Ms. Mera stated.  Also present at trial and announced by the defendants are two additional witnesses, Adesh Baharani and/or Ajay Baharani, who will also in all likelihood *deny* the truth of that testimony.[8]  This additional argument pursuant to Rule 403 is no less puzzling than the other one discussed above.

### iii. **The inability to depose witnesses is a non-issue**

Defendants' next argument is similarly difficult to understand.  After the original trial date, scheduled for early March of this year, defense counsel proposed taking some half a dozen depositions of persons mentioned by Ilianny Mera as having been present when Mr. Demir made his discriminatory comments.  Defense counsel wanted to preserve the testimony of these persons, who live on other Caribbean islands, so that he could present the deposition testimony at trial.

Plaintiff opposed this request as unnecessary, burdensome and seeking evidence which would be entirely cummulative, in light of the likely testimony by Mr. Demir, himself, denying that he made the comments.

The matter was addressed at a status conference before the newly assigned Magistrate Judge on May 5, 2011, two months after the original trial date.  The court denied the defense request to depose these witnesses, but allowed that the witnesses, without having been deposed, could be brought in as

---

[8]Since Ms. Mera's testimony was first taken in January of this year, in preparation for a March trial date, plaintiff never inquired of Mr. Demir with respect to these comments.  Nor did she have the opportunity to depose either of the Baharani's, whose identity was made known to the parties only in April, *after* the original trial date.  Defendants, however, has certainly had access to these witnesses.  Plaintiff, however, is claiming no prejudice with respect to this unequal access.

newly announced witnesses for trial.

Now, the defense has announced two such witnesses, meaning that they will have three live witnesses (the two Baharani's and Mr. Demir) to counter Ms. Mera's deposition testimony.  Over three-days, defendants also had a full opportunity to cross-examine Ms. Mera, and they have designated many portions of her deposition to be entered into the record at trial.  Clearly, they have sufferent *no prejudice* whatsoever with respect to this matter.

## C. Ilianny Mera's testimony regarding Krystal Sweeney's hostility to Spanish-Speakers

Defendants also question the submission into evidence of testimony by Ilianny Mera about Krystal Sweeney's hostility to Spanish speakers.  According to Ms. Mera, Ms. Sweeney, a Canadian-based key member of DGI's "management team," was hostile to Spanish speakers,  both because of their inexact conjugation of verbs in English and because they would, on occasion, speak Spanish in her presence.  Ms. Mera, who is bilingual and whose English is less accented than plaintiff's, has also testified that Krystal Sweeney did not like Ms. Arroyo because of her inability to speak perfect English and that Ms. Sweeney suggested to Mr. Demir that he charge a $1.00 penalty every time Ms. Arroyo would speak Spanish.  *See, Docket #134, at page 3.*

In their Motion in Limine, defendants assert that plaintiff " intends to introduce this testimony ... as support for her pregnancy discrimination claim."  *Id.*  They also contend that plaintiff has a more illicit motive, " to inflame the Puerto Rican jury against a non-Puerto Rican company," and " poison this jury."  *Id.*   Both of these statements are entirely erroneous.

## D. Plaintiff's Opposition to the Motion in Limine concerning Krystal Sweeney's comments

Plaintiff does not intend to present this evidence in order to show that plaintiff was discriminated against on an entirely *different* basis – national origin, rather than pregnancy

discrimination.  The logic of that contention is again entirely baffling.  Nor does plaintiff have *any* interest in " inflaming" a Puerto Rican jury.

Apparently, defendants have totally missed the evident *relevance* of this testimony.  Ms. Sweeney has been put forth by the *defense* to show that plaintiff Eunice Arroyo *had poor communication skills*.  The defense has affirmatively stated that Ms. Sweeney "suggested that Demir terminate Arroyo's employment months before her actual termination."  Krystal Sweeney, moreover, testified in her deposition that  In her deposition, Ms. Williams stated that Ms. Arroyo — despite her bonus and pay raises and promotion — was "the worst Territory Manager that the company ever had...." *Krystal Williams deposition, submitted with Opposition Statement of Facts re Summary Judgment, Docket #83, at page 82.*

There is considerable evidence in this case which calls into question the veracity of this opinion by Ms. Sweeney.  The absence of any contemporaneous documentation regarding plaintiff's poor performance, and Ms. Sweeney's opinion as to her being the " worse" Territory Manager in the history of DGI is highly probative of the falsity and pretextual nature of the defendant's proffered reasons for the employment action. *See, Reeves v. Sanderson, 530 U.S. 133 (2000).* Yet another piece of the puzzle is the fact that Ms. Sweeney simply did not like plaintiff, for reasons unrelated to her job performance.

Had Ms. Sweeney expressed distaste for red-heads or individuals who are vegetarians, this clearly would call into question her comments about the performance of a red haired individual or one who shuns meat consumption.  It is no less true with respect to an employee who happens to speak English as a second language.

In light of the defense's contention that Ms. Sweeney was so eager to have Ms. Arroyo be fired

because of her "poor" performance, it is beyond serious question that plaintiff is entitled to explore Ms. Sweeney's motive. *See, Reeves, op. cit.* (uncorroborated evidence by a decision-maker as to his or her "non-discriminatory" reasons can be countered by plaintiff through evidence that contradicts the decision-maker or impeaches his or her statement as to motive.) *Cf, Santiago-Ramos v. Centennial,* *supra.*

Plaintiff is not presenting this evidence to demonstrate that Ms. Sweeney discriminated against plaintiff because she was Spanish-speaking. Nor is she presenting a new "claim" on this basis, which was not preserved in the EEOC filing, or attempting to " inflame" the jury. The evidence, rather, provides a perfectly logical alternative explanation to defendants' proffered testimony by Ms. Sweeney that plaintiff's poor performance included her problems with communication. Clearly, this testimony is relative and probative.

As to defendants' potential concern about the prejudicial effect of such testimony, plaintiff respectfully suggests that the proper course of action would not be to exclude the testimony, but rather for the court to issue a limiting instruction, explaining to the jury the limited purpose for which this testimony is offered.

**E. Motion in Limine with respect to the Florida litigation**

Defendant's next Motion in Limine, *Docket #135,* seeks to exclude the references to the Florida case Mr. Demir filed against the plaintiff, including the dismissal thereof for lack of personal jurisdiction, and the sanctions against Mr. Demir and DGI for filing a lawsuit in Florida, based on Mr. Demir's sworn testimony that plaintiff had been to Florida on several occasions on DGI business, despite his knowledge that this was *false.* Defendants contend that the documents plaintiff seeks to introduce and the testimony by plaintiff with respect to this matter are " completely irrelevant," and "

so disconnected from [Ms. Arroyo's] claims that [they do] have any probative value and [are] highly

prejudicial ..."  *Docket #135, page 2.*

## F. **Plaintiff's response to the request in limine regarding the Florida litigation**

On reflection, it is not surprising that this Motion in Limine omits entirely any discussion of the

nature of plaintiff's claim.  Plaintiff has repeatedly asserted that the Florida lawsuit was *in retaliation*

for her having presented employment discrimination case.  In fact, she is claiming damages for having

to *defend* against the lawsuit, in a forum where the court clearly had no jurisdiction over her.

Plaintiff's evidence respecting this retaliation is extraordinary and compelling.  Rather than

merely requesting a set-off in the instant action, the defendants attempted to punish plaintiff for

asserting her rights — forcing her to defend an action where they knew it was improper to sue her. The

defendant's goal to have plaintiff withdraw her claim was clear from the inception, as early as

December of 2008, when Mr. Demir conditioned plaintiff's receipt of thousands of dollars of *earned*

*compensation* on the withdrawal of her claim ("written confirmation that the legal action you have

started against DGI has been cancelled.") *See, ¶1.7 above.*  As set forth above, the retaliation continued

thereafter.  Each time plaintiff gave signs of pursuing her claim, the Florida threat of treble damages

came through loud and clear.

The cases cited by the defendants in Docket #135 are absolutely inapposite with respect to this

point.  In each and every one of those cases, the " prior litigation" did not have *independent relevance.*

See, eg., <u>Kinan v. City of Brockton</u>, *876 F.2d 1029 (1ˢᵗ Cir. 1989)* (excluding evidence of other civil

rights actions in the context of an individual action for damages resulting from police misconduct;

holding that this evidence was properly excluded because they were decided on the " basis of

negotiations, not findings of fact" and had only "remote relevancy" with respect to plaintiff's pattern

and practice allegations against the City.)

These cases have absolutely no application to the case at bar, in which plaintiff's *claim* is that she had to incur in close to $40,000 to defend a case as to which there was no jurisdiction and the defendants have been sanctioned, and that the entire Florida case was in *retaliation* for presenting her discrimination claim.

It should also be noted that besides being wrong on the law, defendants are also wrong on the *facts.* The lawsuit in Florida was filed not " a year after [plaintiff] filed the instant suit," *Docket #135, page 2,* but rather *twenty two (22) days* after the instant suit was filed. *See, discussion at ¶¶1.4 to 1.5 above.*

Finally, one cannot help but observe that defendants want to have it both ways.  On the one hand, they have *announced as an exhibit their demand letter (Exhibit UU in the Proposed Pretrial Order)*, telling plaintiff that she is guilty of " civil theft," subject to treble damages and should GOVERN HERSELF ACCORDINGLY. *See, Exhibit C hereto.*  Yet, they seek to prohibit plaintiff from introducing evidence regarding the *damage* perpetrated against her as a result of the civil suit filed in Florida, concerning events which took place in Puerto Rico, and regarding a person who had not been to that state in decades.  Defendants' argument simply makes no sense.

## G. **Defendant's Motion to Exclude the Testimony of plaintiff's mother, atty. Carmen Pérez**

Defendants have also moved to exclude the testimony of plaintiff's mother, attorney Carmen Pérez, respecting an incident which occurred in early July of 2008, when the company sought a return of the salary DGI had paid plaintiff while she enjoyed her statutorily protected maternity leave.  The defendants assert that plaintiff is attempting to insert "expert testimony" by this witness relative to the advice Ms. Pérez gave to her daughter.

14

**H. There is no basis on which to exclude this testimony**

Again, defendants are providing only a small portion of the factual context for this evidence. On July 2, 2008, as plaintiff was nearing the end of her maternity leave, a statutory right she has under Puerto Rico law, she received a most disturbing email from Rachel Doherty, of the DGI Management Team.  Ms. Doherty indicated to Ms. Aroyo that there had been a "misunderstanding," which had resulted in plaintiff "getting [her] salary despite being on maternity leave." Ms. Doherty informed plaintiff that they had "to work out how this money will be paid back to DGI." *See, Plaintiff's Statement of Facts in Opposition to Summary Judgment, Docket No. 83, at ¶¶4.33-4.35 and Exhibit 23 thereto.*

Needless to say, this caused plaintiff great stress.  Ms. Arroyo immediately sought the advice of her mother, a practicing attorney, who informed her that which virtually all attorneys (and employers) in Puerto Rico know — that there is a statutory right for eight weeks of *paid* maternity leave.

At trial, plaintiff's mother will testify as to how this *obvious* violation of law affected her daughter.  Her testimony will address facts as to which she has *personal knowledge,* and will provide the jury with information as to what she, Carmen Pérez, did to help her daughter confront this situation (including her "legal advice" to Ms. Arroyo.)    Clearly, this is not "expert" testimony in the classic sense.

On the basis of her conversation with her mother, Ms. Arroyo wrote to the company towards the end of that day, July 2nd, in a state of extreme distress, and made specific reference to the law providing for paid maternity leave.  Ms. Pérez was involved in every step of that process.  Without her testimony, there would be a major gap, with the jury not knowing how it was that Eunice Arroyo could so quickly come up with an email referring to the specific provisions of Puerto Rico law.

Defendants' complaint on this score is also somewhat mystifying, in light of the fact that on that

very day, July 2, 2008, Rachel Doherty, herself, wrote back to Ms. Arroyo and told her to ignore her previous communication.  In her email, which crossed with the email Ms. Arroyo wrote on the basis of the advice from her mother, Ms. Doherty, a non-lawyer, indicated that she had "researched Puerto Rican laws on Maternity leave and it seems that you are entitled to 8 weeks of paid time." *See, Exhibit 23 to the Docket #83.*

Defendants' current that Carmen Pérez's testimony should be excluded as unannounced "expert" testimony is truly amazing, in light of the fact that they have announced as an *exhibit* in their case Ms. Doherty's email setting forth the results of her "research" on Puerto Rico law.  *See, PT, defendants' exhibits EE and FF.*  If defendants' argument is to be understood, Ms. Doherty, who is not a lawyer, can offer "expert" opinion (or maybe lay opinion) testimony about her "research" of Puerto Rico law, but Ms. Pérez, who *is* an attorney, cannot testify as to the same opinion she had about the law of Puerto Rico.  Again, the argument makes no sense.

There is no factual dispute here.  DGI attempted to have Ms. Arroyo return the payments she had received during her maternity leave.  Ms. Arroyo went to the most logical person, her mother, who also happens to be a lawyer, and she confirmed that this was not proper.  She then wrote an email stating the results of her "research" with her mother.  And, meanwhile, DGI did the same "research," and came up with the same opinion.  Clearly, Ms. Pérez's testimony is relevant and admissible.

## I. Defendants' final Motion in Limine - María Cabiya and other employees at DGI

Defendants' most vociferous Motion in Limine is at Docket #137.  It concerns the video-taped deposition of María Cabiya "any testimony or other evidence plaintiff may introduce regarding certain previous employees of Defendant DGI who did not return to work at DGI after having children." *Docket #37, page 1.*  Defendants assert,incorrectly, that the purpose of this testimony is to have the jurors

engage in a "leap of faith" that "since Ms. Cabiya claims she was unfairly treated while pregnant at DGI

... and eventually terminated by *Ms Doherty*,"that this means that "Ms. Arroyo must have also been

treated unfairly when she was terminated by *Mr. Demir*."  *Docket #37, page 3 (emphasis supplied.)*

Defendants also question plaintiff's evidence that women who give birth simply do not return to work

at DGI. *Id.*

## J. Defendants misconceive the purpose of the evidence: It is admissible as to motive

At the outset, it should be noted that there is no distinction between a dismissal "by Mr. Demir"

and one by his Miami office manager and Vice President, Rachel Doherty.  Mr. Demir has consistently

testified under oath that the decision to dismiss the plaintiff was made at a meeting of the DGI

"Management Team," made up of Krystal Williams, Blanca Rodríguez and Rachel Doherty.

DGI is a tightly-run company with less than two dozen employees and a management team made

up of three to four persons.  In *one single month*, October of 2008, DGI  managed to dismiss the only

two employees who gave birth that year ---- Eunice Arroyo and María Cabiya.  This followed a number

of other cases in which other women went out on maternity leave and never returned to DGI.  This

testimony clearly is relevant and admissible.

The defendants' legal discussion on this point completely neglects the overwhelming authority

allowing for such testimony in a *disparate treatment case involving a single employee.*  As noted by

Honorable Charles R. Richey in the leading treatise, Manual on Employment Discrimination Law sna

Civil Rights Actions in the Federal Courts, Vol. 1, West, 2011 Thomson Reuters, at §1:137, in such

cases, "an individual plaintiff may introduce the testimony of other indiviudals who have alleged that

they were also subjected to discrimination at the hnds of the defendant.  Such testimony may

demonstrate that the defendant 'betrayed in other matters a predisposition towards discrimination

against members of the involved minority.'" *Id., quoting* <u>Pettit v. U.S.</u>, *488 F.2d 1026.*

In their argument, defendants utterly misconstrue the nature and purpose of proferred testimony. The bulk of their Motion in Limine cases involving evidence introduced to establish a "pattern of discrimination" at DGI. Their discussion concentrates on issues such as statistics and comparators needed in cases of that nature. The case at bar, however, is not a "pattern" case, but rather one alleging disparate treatment. What defendants fail to realize is that the testimony which plaintiff intends to offer is classic evidence going not to a "pattern," but rather to establish the pretextual nature of an employer's explanation of a particular adverse employment decision.

While time constraints for the presentation of this opposition do not allow a full discussion of the dozens of inapposite cases cited by defendants, it must be pointed out that these cases are either class actions (as to which Rule 23 criteria apply) or "pattern and practice" cases based on statistical evidence. Other cases on which defendants rely concern incidents in very large companies too remote in time or location, or in fact in the identity of the offender to have any probative value.

One example of the inapposite authority demonstrates the point. *Callanan v. Runyan, 75 F.3d 1293 (8th Cir. 1996),* a case involving a large post office facility, is discussed by defendants at length at pages 5 and 8 of their Motion. While defendants would have this court accept their characterization of that case as precluding testimony regarding other "episodes of discrmination," this simply is not true. The problem in <u>Callanan</u> was that the proferred testimony concerned alleged discriminatory by *other supervisors who were <u>not</u> plaintiff's supervisors. Id., at 1297-98.* Even so, the Court of Appeals for the Eighth Circuit acknowledged that a blanket rule excluding such testimony was not appropriate.

In fact, the Eighth Circuit has *allowed* testimony of this nature in appropriate factual settings. *See, eg.* <u>Estes v. Dick Smith Ford</u>, *856 F.2d 1097 (8th Cir. 1988).* *Estes,* like the case at bar, was a

18

*disparate treatment case* alleging individual discrimination. The plaintiff alleged race and age bias with respect to his dismissal from his employment.  Reversing a grant of summary judgment for the defense, the Eighth Circuit held that the district court improperly "excluded evidence of prior acts of discrimination against black customers" at the establishment. *856 F.2d at 1104.*  Even though the other acts addressed discrimination against *customers*, and Estes was claiming *employment* discrimination, the court determined that the evidence was relevant because "the discrimination against black customers occurred in [plaintiff's] own Service Department, and Estes alleged that the manager of the Service Department who authorized this practice also played a role in the decision to fire [him]." *Id, at 1104.* Holding that the plaintiff "should have been allowed to present this evidence at trial," the court also noted that "it *defies common sense* to say ...  that evidence of an employer's discriminatory treatment of black customers might not have some bearing on the question of the same employer's motive in discharging a black employee." *Id (emphasis supplied.)*

The case law is awash in decisions reflecting these basic principles.  A plaintiff can introduce evidence by other employees who are similarly situated and who suffer similar acts which may be construed as discrimination, particular if the events are close in time to that alleged in the complaint or were carried out by the same managers.  *See, eg., Heyne v. Hill, 69 F.3d 1475 (9th Cir 1995)*, in which the Ninth Circuit found it was an abuse of discretion to exclude testimony of sexual harassment of other employees by the same supervisor.  The proferred evidence allows the inference that it is "more likely that an employer viewed his female workers as sexual objects.... there is a direct link between the issue before the jury – the employer's motive behind firing the plaintiff — and the factor on which the jury's decision is based — the employer's harassment of other female employees." *See, also Lindsey v. Prive Corp, 987 F.2d 324, 328 (5th Cir. 1993)* (all three waitresses/dancers over forty dismissed at

the same time); _Reeves v. General Foods, 682 F.2d 515, 524 (5th Cir1982)_ (another older worker forced to resign under similar circumstances).

The First Circuit has followed suit. _See, Brennan v. GTE Government Systems, 150 F.3d 121 (1st Cir 1998)_ (allowing evidence of termination of other older employees); _Brown v. Trustees of Boston Univ, 891 F.2d at 349_ (considering evidence of the university President's remarks demonstrating a patronizing attitude with respect to another female tenure candidate unrelated to the plaintiff.) Quoting the leading case of _Hunter v. Allis-Chalmers Corp 797 F.2d 1417 (7th Cir 1986),_ the First Circuit took note of "the difficulty of proving employment discrimination — the employer will deny it, and almost every worker has some deficiency on which the employer can plausibly blame the worker's troubles." The Court of Appeals rejected the university's contention that the admission of this evidence was erroneous. "The question of the legtimiacy of the employer's motivation in firing the employee ... is one upon which past acts of the employer has some bearing." _Id (internal citations omitted)._

The proferred evidence in the case at bar is similarly pertinent and admissible; to exclude it would be reversible error.

## K. Glaring contradictions in defendants' argument

Before leaving this point, plaintiff has no choice but to point out certain glaring contradictions in the defendants argument in Limine at Docket#137.

_First,_ if it is indeed true that María Cabiya disclaims any notion that she was, in fact, the victim of discrimination, _Docket #137, page 2,_ then why doth the lady protest? It is indeed difficult to understand the defense argument that they will be unduly prejudiced by the admission of this testimony, which they claim shows that she was _not_ the victim of discrimination. Defendants had ample opportunity to cross examine Ms. Cabiya during her video-taped deposition. Their cross-examination

can be presented to the jury, which will reach its own conclusions about the import of her testimony.

*Second,* it should be noted that defendants have proposed the testimony of Alia Madelaire, another employee in the Miami office who became pregnant and gave birth *after plaintiff was fired*, who, according to defendants, will "testify as to DGI Florida's employment practices related to pregnancy." *See, PT, at page 111.* On the one hand,the defendants are asking this court to exclude evidence of other employees who did not return to work at DGI after having a child. Yet, the defendants, themselves, intend to present the testimony of Ms. Madelaire, who *did* return to work, albeit after plaintiff presented her discrimination charge.

Defendants have argued that because María Cabiya, who worked in the Florida office, did not "have the same job duties and level of responsibility as the plaintiff," her "testimony should be stricken." *Docket #137, page 11.* Yet, Alia Madelaire, who also has different "job duties and level of responsibility," should be permitted to testify about how she was treated as a pregnant employee *after* plaintiff filed her claim of discrimination.[9] The contradiction is inescapable.

Defendants also propose presenting the testimony of Mr. Demir, himself, who will state that he "does not take termination lightly and has a history of being overly kind to employees..." *Id., page 28.* In other words, according to the defendants, they should be allowed to testify as to Mr. Demir's motives and as to his kind treatment of employees, but plaintiff should not be allowed to counter this testimony.

The Motion in Limine at Docket #137 should also be DENIED.

---

[9]Plaintiff, of course, may well object to the presentation of Ms. Madelaire's testimony at trial, depending on the evidentiary context in which it arises.

### III. CONCLUSION

Defendants have presented four motions in limine which are based on incomplete factual scenarios, incorrect interpretations of the case, and in some instances, arguments defying any logic. For all of the above reasons, each and every one of the defendants' Motions in Limine whould be denied.

Respectfully submitted in San Juan Puerto Rico, this 10th day of November, 2011.

> **Berkan/Mendez**
> **Calle O'Neill G-11**
> **San Juan, Puerto Rico 00918-2301**
> Tel.: (787) 764-0814
> Fax.: (787)250-0986
> bermen@prtc.net

This is to certify that this motion is being submitted through the ECF filing system, which will automatically notify all counsel of record.

> By:/s/ Judith Berkan
> Judith Berkan
> US DC No. 200803
> **berkanj@microjuris.com**